IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| STEVEN W. WOODSON, Jr., | ) | Case No. 1:20-cv-310 Erie |
| Plaintiff | ) ) ) | RICHARD A. LANZILLO |
| v. | ) ) | UNITED STATES MAGISTRATE JUDGE |
| JODI SHEESLEY, et al., | ) ) | MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION |
| Defendants | ) ) | TO DISMISS [ECF No. 30] |

I. Background

Plaintiff Steven W. Woodson, Jr., an inmate incarcerated at the State Correctional Institution at Forest (SCI-Forest), initiated this pro se civil rights action on October 28, 2020. *See* ECF No. 1. In his Second Amended Complaint – the operative pleading in this action – Woodson alleges that prison officials violated his Eighth and Fourteenth Amendment rights by failing to adequately address his suicidal inclinations. *See* ECF No. 25 at ¶¶ 17-35.[1] In addition to the moving Defendant, Nurse Practitioner (CRNP) Angel Gressel, Woodson asserts claims against a host of Department of Corrections' (DOC) officials and employees.[2] *Id*. ¶¶ 2-10. Invoking 42 U.S.C. § 1983, Forsythe seeks compensatory and punitive damages. *Id*. ¶¶ 48-54.

In his pleading, Woodson describes a meeting (on an unidentified date) with the prison's Psychiatric Review Team (PRT) and Program Review Committee (PRC), the combined

---

[1] Although Woodson's pleadings initially appeared to assert a state law claim for negligence, Woodson filed a notation on the docket clarifying that no such claim was intended. ECF No. 29.

[2] The DOC Defendants filed an Answer on April 21, 2021. ECF No. 33.

1

members of which, including Gressel, are the Defendants in this action. *Id*. ¶¶ 25-26. During that meeting, Woodson informed Defendants that a voice in his head (referred to as "Shadow") had told him that it was going to force him to cut his throat and give himself a "Colombian Necktie" as soon as it got the chance. *Id*. ¶¶ 27-28. Defendants downplayed the situation and asked Woodson if he "was doing this just to get back to H-block." *Id*. ¶ 31. Woodson was told that his medication would be adjusted and that he would be sent to the Step-Down Unit (SDU). *Id*. ¶ 32. Woodson complained to Gressel and the PRT that his medication was "ineffective," *id*. ¶ 33, but Defendants disregarded his complaints. *Id*. ¶ 35. It is unclear whether his medicine was ever adjusted.

Sometime later, on August 3, 2020, Woodson used his cellmate's razor to cut his throat. ECF No. 25 ¶ 18. After being escorted to medical, Woodson received eleven stitches and was placed in a Psychiatric Observation Cell (POC). *Id*. ¶ 22.

Presently pending is Gressel's motion to dismiss. ECF No. 30. Woodson did not file a brief in opposition. As such, this matter is ripe for disposition.[3]

II.     Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A complaint should only be dismissed

---

[3] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.

2

pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)).  In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions.  *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).  Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint.  *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the Court accept legal conclusions disguised as factual allegations.  *Twombly*, 550 U.S. at 555 (citing *Papasan*, 478 U.S.  at 286).  *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Finally, because Plaintiff is proceeding pro se, the allegations in the complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read a pro se litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

    III.    Analysis

    1. Deliberate indifference to medical needs

Woodson first contends that Gressel violated the Eighth Amendment's prohibition against cruel and unusual punishment by displaying deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97 (1976) (stating that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment") (internal quotation omitted). To establish a violation of his constitutional right to adequate medical care, a plaintiff is required to allege facts that demonstrate: (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.

1999).  Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

Woodson's claims in the instant action focus on Gressel's alleged failure to take sufficient precautions to prevent him from harming himself.  As outlined above, Woodson avers that he informed Gressel of his self-injurious inclinations and the ineffectiveness of his medication but received no additional care or treatment.  Woodson contends that Gressel's response amounted to a complete or nearly complete denial of treatment.

Allegations of deliberate indifference must satisfy "a high threshold." *Anderson v. Bickell*, 2018 WL 5778241, at *2 (3d Cir. Nov. 2, 2018).  It is well-settled that "an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim." *Tillery v. Noel*, 2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018) (collecting cases).  Such complaints fail as constitutional claims because "the exercise by a doctor of his professional judgment is never deliberate indifference." *Gindraw v. Dendler*, 967 F. Supp. 833, 836 (E.D. Pa. 1997) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.")).  "Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983." *Tillery*, 2018 WL 3521212, at *5 (citing *Gause v. Diguglielmo*, 339 Fed. Appx. 132 (3d Cir. 2009) (characterizing

a dispute over medication as the type of "disagreement over the exact contours of [plaintiff's] medical treatment" that does not violate the constitution)).

By the same token, "the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation." *Tillery*, 2018 WL 3521212, at *5 (quoting Estelle, 429 U.S. at 106). "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67 (citations omitted). Thus, "courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care." *Hensley v. Collins*, 2018 WL 4233021, at *3 (W.D. Pa. Aug. 15, 2018) (quoting *Clark v. Doe*, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000)). *See also Wisniewski v. Frommer*, 751 Fed. Appx. 192 (3d Cir. 2018) (noting that "there is a critical distinction 'between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment.'") (quoting *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017)).

Citing these well-established principles, Gessel argues that Woodson's own admissions indicate that he received "some level of medical care" following his PRT and PRC meetings, primarily in the form of a promise to adjust his medication and placement in psychiatric observation. While this argument may ultimately carry weight on a fully developed record, it is impossible, at this stage in the proceedings, to determine whether Woodson's allegations amount to a complete denial of care or a mere disagreement as to the care provided. Woodson's pleading does not indicate whether his medications were ever adjusted, and his placement in a POC occurred after he attempted to cut his throat. Drawing all inferences in his favor, the Court

cannot conclude that Woodson has failed to plead a plausible claim for relief. Gessel's motion to dismiss Woodson's Eighth Amendment claim must be denied.

2. Equal protection

Turning to his equal protection claim, Woodson maintains that Gressel and the other Defendants "denied [him] the equal protection guaranteed by the 14th Amendment, by not seeing that I received the housing and treatment provided and available to others suffering from mental ailments and self-destructive behavior." ECF No. 25 ¶ 43. To establish a violation of the Equal Protection Clause, a plaintiff must ordinarily allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286 (3d Cir 2016) (citing *Hassan v. City of New York*, 804 F.3d 277, 294 (3d Cir. 2015)). Although Woodson alleges, in conclusory fashion, that he was treated differently than unidentified "others" in the prison, he has not pleaded any facts suggesting that this difference in treatment resulted from his race, religion, or other prohibited consideration. This deficiency is fatal to his claim.

To the extent that Woodson may be attempting to proceed under a "class of one" equal protection theory, he must establish that: "he was treated differently than others similarly situated as a result of intentional or purposeful discrimination . . . [and] that his treatment was not 'reasonably related to [any] legitimate penological interests.'" *Brayboy v. Johnson*, 2018 WL 6018863, at *11 (E.D. Pa. Nov. 16, 2018) (quoting *Holland v. Taylor*, 604 F. Supp. 2d 692, 701 (D. Del. 2009)). In the specific context of prison discipline, this means that he must "demonstrate disparities in [treatment] that are not reasonable related to legitimate state

interests." *Rhodes v. Robinson*, 612 F.2d 766, 775 (3d Cir. 1979). Woodson has made no attempt to meet this burden and, as such, his equal protection claim must be dismissed.

IV.     Conclusion

For the reasons stated herein, Defendant's motion to dismiss [ECF No. 30] is granted in part and denied in part. Defendant's motion is granted as to Woodson's equal protection claim but denied as to his Eighth Amendment claim.

                                                                      RICHARD A. LANZILLO
                                                                      United States Magistrate Judge

Dated: October 29, 2021